**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS,**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARK THOMAS, individually and on behalf of all others similarly situated, | ) | No. 08 C 455 |
| Plaintiff, | ) | |
| v. | ) | Judge Elaine E. Bucklo |
| HUGO'S FROG BAR-NAPERVILLE, LLC, | ) | Magistrate Judge Valdez |
| Defendant. | ) | |

**<u>DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION</u>**

Plaintiff gives short-shrift to the factors necessary to certify the class he seeks to represent. Instead, he relies heavily on the fact that other FACTA classes have been certified in this District. Plaintiff's bare-bones Motion is devoid of necessary supporting factual allegations and provides an insufficient basis for this Court to certify the proposed class. First, Plaintiff has failed to meet Rule 23(a)'s requirements, offering scant support to establish that he is a typical or adequate class representative. To the contrary, Hugo's has discovered information that demonstrates that Mr. Thomas is not adequate or typical. He has little understanding of the issues in the litigation and lacks the necessary commitment to pursue his claims or properly police class counsel. Certain defenses unique to Mr. Thomas make him atypical and thus in conflict with other putative class members.

Second, certification is inappropriate under Rule 23(b)(3). FACTA statutory damages may range widely. Even if Hugo's is found to have been willful in its conduct, the damages assessed against it must reflect actual circumstances, necessitating a fact-intensive analysis into the particular circumstances of each plaintiff's experience, behavior and knowledge. Because individual issues predominate, class certification is inappropriate. Moreover, a class action is not superior to the individual approach because Congress provided incentives for individuals to file

suits under FACTA in the form of attorney fees and statutory damages. Because Plaintiff fails to meet his burden under Rule 23(a) or 23(b)(3), his Motion should be denied.

**FACTUAL BACKGROUND**

On May 12, 2007, Plaintiff used his American Express card at Hugo's, a privately owned restaurant. (Compl. ¶¶ 18, 20; Ex. A, Deposition Transcript of Mark Thomas ("Thomas Tr.") at 40.) Plaintiff's receipt displayed the last four digits of the account number and the expiration date contained on the card. (Thomas Tr. at 8, 40.) On May 19, 2007, Plaintiff used his VISA card at Hugo's. (Compl. ¶ 20; Thomas Tr. at 39.) Plaintiff's receipt displayed the last four digits of the account number, the card's May 2007 expiration date, and his name. (*Id.* at 39, 98.)

Hugo's was not aware of any expiration date-masking requirement until late May 2007. (Ex. B, D.'s Resp. to Interrog. No. 6.) Once it learned that its receipts displayed expiration dates and that printing the expiration date violates FACTA, Hugo's immediately updated its point-of-sale system to remove the expiration date, which change went into effect on June 1, 2007. (*Id.*)

When Mr. Thomas received his receipts from Hugo's in May 2007, he was already aware of FACTA and its requirements. (Thomas Tr. at 15.) Indeed, Plaintiff has worked in various accounting roles for automobile dealerships over the past twenty years. (*Id.* at 16.) During his employment, he became familiar with compliance issues related to the protection of confidential consumer information, including FACTA compliance, and has assisted the dealerships' compliance with such consumer protection laws as the Fair Credit Reporting Act, which FACTA amended. (Ex. C, Mark Thomas Deposition Transcript in *Thomas v. Ritz Camera Ctrs., Inc.*, No. 08 C 453 (N.D. Ill.) ("Ritz Tr.") at 57, 60-61, 63, 73; Thomas Tr. at 17, 26-29.) Despite keeping abreast of such laws and attending several work-related conferences, Plaintiff admits that he did not understand much about FACTA. (Thomas Tr. at 14, 17-20, 93-94.)

Although Plaintiff realized in May 2007 that his Hugo's receipts contained expiration dates, he did not consider whether they were FACTA-compliant until around January, 2008. (Ritz. Tr. at 60-62.) At that time, Mr. Thomas, who does not discard his credit card receipts, located between twenty to forty receipts non-compliant receipts, including others for the VISA and American Express cards he used at Hugo's, which he continued to use thereafter. (Thomas Tr. at 40, 42, 56, 135-136.) Mr. Thomas also located one receipt on which his entire card number was displayed. (*Id*. at 42.) Mr. Thomas has not cancelled any of these credit cards nor has he notified any credit card company of the exposure of the cards' expiration dates. (*Id*. at 64-66.)

In 2005, Plaintiff was the victim of identity theft on at least three separate occasions. (Compl. ¶ 17; Thomas Tr. at 102-103.) His American Express card was used by a thief who made purchases and opened accounts at Sam's Club, Home Depot, and Lowe's. (Thomas Tr. at 102-103.) Plaintiff believes he is at greater risk of identity theft or credit card fraud based on these prior occurrences. (*Id*. at 8-9.) Regardless, however, Plaintiff never thought of notifying his credit card companies that his expiration dates had been printed on receipts. (*Id*. at 66.)

Upon locating his receipts, Mr. Thomas felt that Hugo's violated FACTA and contacted Mr. Keogh, a friend of his cousin's. (Thomas Tr. at 9-10; Ritz Tr. at 27.) Plaintiff is unable to articulate why he selected Mr. Keogh nor identify any inquiry he made as to Mr. Keogh's qualifications to represent the class. (Thomas Tr. at 10-13, 82-83.) Plaintiff retained Mr. Keogh in late 2007 and filed this Complaint against Hugo's in January 2008, over seven months after he noticed his receipts displayed the expiration dates and on the same day as he filed a virtually identical complaint against Ritz. (*See* Ex. D, Pl.'s Resp. to Req. for Adm. Nos. 7-9; Thomas Tr. at 10.) Plaintiff has not pursued actions against any of the other businesses from which he received non-compliant receipts. Plaintiff could not explain why he has not pursued other

lawsuits nor why he chose to sue Hugo's and Ritz. (Ex. E, Pl.'s Resp. to Interrog. No. 5; Thomas Tr. at 44-47.) He defers to class counsel for such decisions. (Thomas Tr. at 46-47.)

Plaintiff had only limited communication with counsel before the Complaint was filed. (*Id.* at 84.) Plaintiff met in person with Mr. Keogh only briefly before his Hugo's deposition and equally briefly before his Ritz deposition, and had spoken to his counsel on the phone for "[l]ess than 30 minutes if it was that." (*Id.* at 57, 113-114, 151-153.) Although Mr. Thomas claims to have read the documents he has filed in this case, he is unfamiliar with their content, and has not signed a single document, acknowledging that he has been "not available" to do so. (*Id.* at 100-102, 118, 139-145.) Plaintiff could not identify the court in which his action is pending, or the judge; nor is he familiar with many of the Complaint's allegations. (*Id.* at 85-86.) In fact, Plaintiff mistakenly believes that "willfulness" is a lower standard of culpability than "negligence" and thus, when supposedly reviewing the Complaint, was unaware of the gravity of his allegations. (*Id.* at 102.)

Plaintiff admits that he has not suffered any actual damages, nor does he have any proof that any class member suffered harm. (Thomas Tr. at 61, 64-65.) Although the Complaint alleges that the printing of an expiration date alone is sufficient to permit identity theft, Plaintiff disagrees, conceding that a fraudster cannot determine his credit card number from display of the expiration date. (*Id.* at 99.) Experts agree. *See* H.R. 4008 § 2(a)(6). Indeed, acknowledging the lack of harm, on May 13, 2008, the U.S. House of Representatives unanimously passed H.R. 4008, which provides retroactive immunity to businesses, like Hugo's, who printed expiration dates on receipts after December 4, 2006.[1/] H.R. 4008 § 3(a)-(b), attached as Ex. F. In an

1/ Although the Court previously denied Hugo's Motion to Stay based on H.R. 4008, now that the Bill has been passed by the House, the Court should reconsider staying the case based on this recent development or, at least, defer ruling on class certification until the end of Congress' current term as the passage of H.R. 4008 by the Senate would mandate dismissal of the case.

attempt to salvage any claimed harm, Mr. Thomas postulates that one could discard his account statement and receipts in the same trash receptacle where a "dumpster diver" could retrieve them, thus obtaining sufficient information to conduct a card not present transaction. (Ex. E, Pl.'s Resp. to Interrog. No. 15.) Yet Plaintiff does not discard account statements and receipts in the same trash receptacle. He does not discard them at all, but rather maintains them at home. (Thomas Tr. at 41-42.)

## ARGUMENT

### I. Class Certification Standards.

The decision whether to certify a class "rests in the discretion of the district court." *J. H. Cohn & Co. v. Am. Appraisal Assocs., Inc.*, 628 F.2d 994, 998 (7th Cir. 1980). The party seeking certification has the burden of demonstrating that it is appropriate, and the failure to meet any one of the requirements of Rule 23 precludes certification. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). In determining whether the moving party has met this burden, the district court must make the factual and legal inquiries necessary to ensure that the requirements are satisfied. *Szabo v. Bridgeport Machs., Inc.*, 249 F. 3d 672, 676 (7th Cir. 2001). In so doing, the court does not accept the movant's factual allegations as true. *Szabo*, 249 F.3d at 675-77; *Gilmore v. Sw. Bell Mobile Sys.*, 210 F.R.D. 212, 217 (N.D. Ill. 2001). Instead, the District Court must resolve factual issues related to class certification and subject them to a "rigorous analysis." *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160-61 (1982)).

"[R]igorous analysis" of the facts is necessary to prevent any injury to defendant and any prospective class members. "Both the absent class members and defendants are entitled to the protection of independent judicial review of the plaintiff's allegations." *Szabo*, 249 F.3d at 677. The Seventh Circuit has noted the need to actively assess the case upon a Rule 23 motion:

> [A]n order certifying a class usually is the district judge's last word on the subject; there is no later test of the decision's factual premises (and, if the case is settled, there could not be such an examination even if the district judge viewed the certification as provisional). Before deciding whether to allow a case to proceed as a class action, therefore, a judge should make whatever factual and legal inquiries are necessary under Rule 23.

*Szabo*, 249 F.3d at 675-76. Rule 23 contains two sets of requirements for the maintenance of a class action. First, an analysis needs to be done under Rule 23(a) and then second, a more rigorous analysis needs to be done under Rule 26(b)(3).

## II. The Proposed Class Does Not Satisfy Rule 23(a)'s Requirements.

Plaintiff seeks to represent a class of "all consumers to whom Defendant Hugo's provided an electronically printed receipt at the point of sale or transaction, after December 4, 2006, which receipt displays (a) more than the last five digits of the person's credit card or debit card number, or (b) the expiration date of the person's creditor debit card or (c) both."[2/] (Compl. ¶ 22.) The proposed class must satisfy Rule 23(a)'s requirements that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Here, Plaintiff is atypical, his interests conflict with the potential class and he will not adequately represent the class. Thus, the requirements of Rule 23(a) have not been met.

### A. Plaintiff's Claims And Defenses Are Not Typical Of The Class.

Plaintiff must establish that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Even though some factual variations may not defeat typicality, the requirement is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large."

2/ Because no evidence exists of receipts issued with more than the last five digits of the credit/debit card used, the class definition Plaintiff proposes should not be certified. (Ex. D, Pl.'s Resp. to Req. for Adm. No. 4.)

*Oshana v. Coca-Cola, Co.*, 472 F.3d 506, 514 (7th Cir. 2006). Typicality is undermined where the named plaintiff is subject to certain specific factual defenses. *Id*. An individual defense that would take a significant amount of time may destroy typicality. *Pruitt v. City of Chicago*, No. 3 C 2877, 2004 WL 1146110, at *9 (N.D. Ill. May 20, 2004). Mr. Thomas is not a typical plaintiff. Although he knew of the requirement to mask the expiration date and noticed such date displayed on two Hugo's receipts, he neither cancelled his VISA or American Express cards nor notified the credit card companies of the purported security breaches. (Thomas Tr. at 64-66.) Mr. Thomas' failure to take such minimal steps to safeguard his credit card information makes him atypical. Because Plaintiff claims that he has been injured by Hugo's actions due to a "heightened risk" for credit card fraud (Ex. D, Pl.'s Resp. to Req. for Adm. No. 1), he will be subject to the unique defenses relating to his own actions (or lack thereof) to protect against such fraud.

Mr. Thomas admits that he is not typical in another respect: he believes that, as a former victim of identity theft, he is more susceptible to credit card fraud than those who have not been victims. (Thomas Tr. at 8-9.) The basis for Plaintiff's "heightened risk" claim, however, is that when one discards account statements and receipts in the same receptacle, a fraudster may have sufficient information to use the credit card in a card-not-present transaction. (Ex. E, Pl.'s Resp. to Interrog. No. 15.) But Mr. Thomas admits he does not discard either statements or receipts. As such, according to his own definition of such risk, the non-compliant Hugo's receipts do not actually place him at a heightened risk of credit card fraud. (Thomas Tr. at 54-55.)

Plaintiff has two non-compliant Hugo's receipts, one showing his name on May 19th and one without his name on May 12th. (*Id*. at 98.) Plaintiff firmly believes his May 19th receipt puts him at a greater risk of identity theft than the May 12th receipt, but he does not identify which of these transaction types makes him typical of the other class members. (*Id*. at 9, 98.)

Further, because Plaintiff's VISA card expired in May, 2007, he could not have been exposed to a heightened risk of identify theft from display of such expiration date for more than two weeks and he admits that one year later, he is unaware of any such identity theft. (*Id*. at 39.)

**B. Mark Thomas Is Not An Adequate Class Representative.**

Rule 23(a)(4) requires that a plaintiff establish that he can "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Plaintiff cannot fairly and adequately represent a class if his claims are antagonistic to or conflict with those of other class members. *Forrest v. Shenandoah Valley Nat'l Park*, No. 06-C-11, 2007 WL 1029503, at *3 (E.D. Wis. March 28, 2007). Plaintiff has asserted virtually no facts to fulfill his burden to demonstrate that he can adequately represent the putative class. The motion should be denied for that reason alone. *See Pruitt*, 2004 WL 1146110, at *10 ("[T]he level of inadequacy the Plaintiffs have demonstrated in the filing of this motion for class certification casts serious doubt on their ability to represent an entire class of individuals.").

A class must have a "conscientious representative plaintiff." *Rand v. Monsanto Co.*, 926 F.2d 596, 599 (7th Cir. 1991). Although the threshold is relatively low, Mr. Thomas does not meet it. Mr. Thomas has not demonstrated that he will monitor the progress of the litigation nor that he takes seriously his role as class representative. He has had only minimal communications with his counsel, who has thus far drafted a Complaint, motion for class certification, discovery requests and responded to Requests to Admit, Interrogatories and Document Requests. But Plaintiff did not sign a single document, acknowledging that he was "not available" to do so.[3/] (Thomas Tr. at 118.) Reliance on the expertise of counsel does not excuse Plaintiff from demonstrating that he will adequately represent the interests of the class. *See Baffa v.*

---

3/ Plaintiff's claim that he reviewed his discovery responses before they were served is suspect, given that he could make only vague references to their content. (Thomas Tr. at 121-139.) When presented with documents Hugo's had produced in discovery, it was clear that Mr. Thomas was unfamiliar with the production. (*Id.* at 107- 109.)

*Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52, 61 (2d Cir. 2000). Like the proposed representative in *Simon v. Ashworth*, "Plaintiff's failure to take even minimal interest in the progress of his case thus far is overwhelming evidence that he cannot adequately represent the interests of the class members." No. CV01324GHKAJWX, 2007 WL 4811932, at *3 (C.D.Cal. Sept. 28, 2007). In determining adequacy, the zeal and competence of the party who wishes to prosecute the action should be considered. *Fendler v. Westgate-California Corp.*, 527 F.2d 1168, 1170 (9th Cir. 1975). A plaintiff is an inadequate representative where he is so unfamiliar with the case that he will not serve the necessary role of "check[ing] the otherwise unfettered discretion of counsel in prosecuting the suit." *Welling v. Axley*, 155 F.R.D. 654, 659 (N.D. Cal. 1994).[4/] Plaintiff's apathy is compounded by the relatively small amount of statutory damages at stake. "The smaller the individual claim, the less incentive the claimant has to police the class lawyer's conduct, and the greater the danger, therefore, that the lawyer will pursue the suit for his own benefit rather than for the benefit of the class." *Greisz v. Household Bank*, 176 F.3d 1012, 1013 (7th Cir. 1999). Because Plaintiff claims that he personally does not seek money from this suit, but merely seeks to change Hugo's behavior, (Thomas Tr. at 60-61), his motivation to pursue this litigation vanished when Hugo's stopped printing expiration dates on receipts almost a year ago.

Mr. Thomas has a pattern of lax behavior. He noticed the expiration date displayed on his Hugo's receipt "when he paid the bill at the restaurant on the second date" or even earlier. (*See* Ex. E, Pl.'s Resp. to Interrog. No. 20; Thomas Tr. at 9-10.) Yet, recognizing the FACTA

---

4/ S*ee also Baffa*, 222 F.3d at 61 ("[C]lass representative status may properly be denied 'where the class representatives have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys.'"); *Ashworth*, 2007 WL 4811932, at *2 (denying FACTA class action where Plaintiff had hardly spent any time working on his case and took "absolutely no interest in monitoring progress of his case"). Without a clear understanding of his role and his obligations to the class, "Plaintiff will be unable to protect the interests of the class." *Id.* at *2. Further, Plaintiff must establish that he is not "a shadow plaintiff; one disinterested or unconcerned." *Forrest*, 2007 WL 1029503, at *4.

violation which, as far as he is concerned, put him at a heightened risk of identity theft, he did not alert Hugo's and, as a three-time identity theft victim, took no steps to protect his identity. (*See* Thomas Tr. at 52-53, 102-103.) Plaintiff did not notify VISA or American Express nor did he cancel either credit card as he felt that doing so could negatively impact his credit report. (*Id.* at 64-65.) He then waited over seven months to file suit. In its totality, Plaintiff's testimony reveals that he cannot, or will not, "prosecute th[is] action vigorously on behalf of the class." *See Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Plaintiff is unfamiliar or confused about a majority of the factual allegations underlying his Complaint. (Thomas Tr. at 100-102, 139-145.) Plaintiff admits that his claim that Hugo's "knew or should have known" about the expiration date-masking requirement (Complt. ¶ 35), is merely an assumption on his part. (Thomas Tr. at 112-113.) Further, though Plaintiff's recovery is dependent upon proving that Hugo's willfully violated FACTA, he defines willfulness as a lesser standard than negligence. (*Id.* at 102.) Thus, Plaintiff approved the Complaint believing that Hugo's acted less culpable than if it had been negligent.[5/] (Ex. E, Pl.'s Resp. to Interrog. No. 8.) For this reason alone, Plaintiff is an inadequate class representative. *Weiner v. Quaker Oats Co.*, No. 98 C. 3123, 1999 WL 1011381, at *10 (N.D. Ill. Sept. 30, 1999) (refusing to certify class representative who failed to comprehend the nature of the case).

## III. Plaintiff Does Not Meet Rule 23(b)(3)'s Requirements.

"Even if Rule 23(a)'s commonality requirement may be satisfied . . . the predominance criterion [of Rule 23(b)(3)] is far more demanding." *Hamilton v. O'Connor Chevrolet, Inc.*, No.

---

5/ Plaintiff is in no position to accuse Hugo's of willful behavior when his own job history reveals that, although he has had some role in consumer credit compliance at various auto dealerships, he did nothing to ensure FACTA compliance. (Thomas Tr. at 16-21, 25-28; Ritz Tr. at 57, 60-61, 63, 68, 73, 81-82.) Indeed, as part of his ongoing education with respect to his job responsibilities, Mr. Thomas was reminded of FACTA's truncation requirement at a seminar of the National Auto Dealers Association in Las Vegas. (Ex. E, Pl's Resp. to Interrog. No. 3; Thomas Tr. at 17-20.) Plaintiff both had access to information regarding the law and disregarded its application, which sets him apart from other potential class members and could affect his entitlement to damages.

02 C 1897, 2006 WL 1697171, at *6 (N.D. Ill. June 12, 2006) (citing *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997)). A class is maintainable where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Here, common questions of fact do not predominate and a class action is not a superior method to adjudicate this controversy.

**A. Common Questions Do Not Predominate.**

The predominance factor requires consideration of the substantive elements of the cause of action, the proof necessary for the various elements, and the manageability of the trial on these issues. If individual issues predominate, then class certification should be denied, since management of such issues by a court will not be efficient. *See Szabo*, 249 F.3d at 675; *Najarian v. Avis Rent A Car System*, No. CV 07-588-RGK, 2007 WL 4682071, at *3 (C.D. Cal. June 11, 2007) (refusing to certify FACTA class as case required separate adjudication of each member's individual claim or defense). Plaintiff claims that the "publication of expiration dates on customer receipts. . . exponentially increases the possibility of identity theft" (Complt. ¶ 62) and that "he and the class have been harmed in that defendant has unnecessarily exposed them to identity theft, including credit card fraud." (Ex. E, Pl.'s Resp. to Interrog. No. 21.) Thus, the possibility that he will suffer identity theft based on display of his credit card's expiration date is a critical component of each plaintiff's claim. Such risk requires individualized inquiry based on each plaintiff's exposure factors. Plaintiff himself presents two types of receipts from Hugo's and claims that the one which displays his name subjects him to a greater risk of identity theft. (Thomas Tr. at 98.) This is but one example of the individualized questions that exist here.

The damages to which each plaintiff may be entitled is similarly individualized. A consumer who foregoes actual damages is entitled to damages of "not less than $100 and not

more than $1,000." 15 U.S.C. §1681n. Each plaintiff may be entitled to a different amount within the statutory range, necessitating a case-by-case analysis. For instance, a plaintiff who carelessly handles receipts and account statements, would be entitled to lower damages than a class member who meticulously shreds such documents. Plaintiff offers no factual allegations regarding his or any other member's actual damages, readily admitting that he has not suffered actual damages. (Ex. D, Pl.'s Resp. to Req. for Adm. No. 1.) Yet Plaintiff offers the Court no guidance or information to guide its decision of the range within which his damages should fall. Because Mr. Thomas claims he is not interested in a monetary judgment, but seeks only to prevent future violations, he could well be in conflict with putative class members who do wish to recover statutory damages or who may wish to eschew the statutory damages and prove actual damage. (Thomas Tr. at 60-61.) Class treatment is not suitable due to "the variance in injury among the members of the class and the cost of the individualized hearings that would in consequence be required for assessing damages." *Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 881 (7th Cir. 2001). Because such individual inquiries will predominate, class treatment is inappropriate.

**B. Class Treatment Is Not Superior.**

Although Plaintiff asserts that class members would not pursue their claims individually as it would be "uneconomical" (Mot. at. 11), "because FACTA provides attorneys' fees for willful violations, such that individual plaintiffs may be able to pursue their claims with little or no economic hindrance, the persuasiveness of Plaintiff's argument is diminished." *See Price v. Lucky Strike Enter.*, No. CV 07-960-ODW, 2007 WL 4812281, at *2 (C.D. Cal. Aug. 31, 2007).[6/] For this reason and the reasons stated below, class treatment is not superior.

6/ As the Advisory Committee Notes to Rule 23(b)(3) suggest, certifying a class should not "bring[ ] about other undesirable results." *Id.* at *4. "[P]utting a company out of business for failing to excise the expiration dates from credit card receipts– especially without proof of actual harm is the type of undesirable result" against which the

### 1. A Class Action Would Not Necessarily Be More Efficient.

Because the Federal Rules provide for liberal joinder of parties and claims, class treatment is not needed here. Fed. R. Civ. P. 20 and 24.[7/] Plaintiff is unaware at this point of any other class member. (Ex. E, Pl.'s Resp. to Interrog. No. 8, Thomas Tr. at 35.) Any class member who wishes to pursue Hugo's for a FACTA violation could join this action. To date, no other suits have been filed against Hugo's and no other potential class members have come forward even though Hugo's ceased printing expiration dates on receipts almost a year ago. Thus, neither the court nor the parties should waste resources in administering a class action, where potential class members are disinterested in pursing litigation and have likely not suffered actual harm.

### 2. Defendant's Compliance Efforts Reduce The Benefits of Class Treatment and Certification Would Create Potential Attorney Abuse.

Defendant's immediate action to comply with Section 1681 upon becoming aware of violations also supports denial of class certification. *See Spikings v. Cost Plus, Inc.*, No. CV 06-8125-JFW (AJWx), at 6 (C.D. Cal. May 25, 2007) (order denying class certification).[8/] Further,

---

Advisory Committee warned. *Id.* at *5. Although Plaintiff relies on the Seventh Circuit's decision in *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006), it does not stand for the proposition that class treatment is appropriate in *all* cases under the FCRA. (Emphasis added.) Congress incorporated the incentive of attorneys fees into FACTA to encourage litigation on an individual basis. "[T]he availability of statutory damages plus the ability to recover attorneys fees and costs provides substantial incentives to bring meritorious individual suits." *Hyderi v. Wash. Mut. Bank., FA*, 235 F.R.D. 390, 404 (N.D. Ill. 2006). *See also Gardner v. Equifax Info. Servs. LLC*, No. 06-3102, 2007 WL 2261688, at *6 (D. Minn. Aug. 6, 2007) ("The attorney's fee provision, allowing harmed individuals to pursue meritorious claims without incurring financial detriment, weighs against a finding of class action superiority over other litigation mechanisms."). "Accordingly, a class action is not necessary for justice to be done" where Congress has guaranteed legal representation under a statute by permitting attorneys fees and costs, even if potential damages are relatively low. *Glover v. Standard Fed. Bank*, 283 F.3d 953, 965-66 (8th Cir. 2002).

7/ "The most obvious alternative to a class action is to remit the class members to the institution of individual actions. The 1966 amendments to the civil rules, which expanded their already liberal joinder policy and significantly enlarge the right to intervene under Rule 24 have made this a more realistic possibility than it once was." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1191 (9th Cir. 2001) (quoting 7A Wright, Miller & Kane, Federal Practice and Procedure § 1779 at 552 (2d ed. 1986)).

8/ Deterrence is one of the public policy objectives of class action. H. NEWBERG, CLASS ACTIONS § 4.36 (4th ed.2002) (noting that class actions "were designed not only to compensate victimized members of groups who are similarly situated ... but also deter violations of the law, especially when small individual claims are involved"). By immediately remedying its operations upon receiving a complaint, more than 7 months before this suit was filed, Hugo's "demonstrated good faith while precluding future violations and nullifying any specific deterrence benefit that might have derived from class certification in the absence of such compliance." *Avis*, 2007 WL 4682071, at *5.

the Seventh Circuit has observed that "blackmail settlements" can arise in situations where there is "a small probability of an immense judgment in a class action." *In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1298 (7th Cir. 1995). "[P]otential for abuse by attorneys is an additional reason why maintenance of a class action is not superior to individual actions under FACTA in cases such as this one [where enormous liability could attach in absence of harm]." *Spikings*, No. CV 06-8125, at 6. *See also Lucky Strike*, 2007 WL 4812281, at *5.

**3. Class Certification Would Violate Due Process.**

Because Plaintiff has failed to identify any benefit derived from class treatment of his claims, and because the entry of any class-wide judgment would violate the due process rights of Hugo's and otherwise produce "undesirable results," class treatment is not the superior method of adjudicating Plaintiff's claims, and class certification should be denied. The potential damages against Hugo's, if it were found to have willfully violated FACTA, could be quite significant compared to the actual harm to the class, which is likely to be zero.[9/]

**4. Because The Passage Of H.R. 4008 By The House Of Representatives Indicates That This Class Action Will Likely Be Dismissed, Certifying This Class Would Result In A Waste Of Time And Resources.**

On May 13, 2008, the U.S. House of Representative unanimously passed H.R. 4008 which, as currently written, would provide retroactive immunity for businesses like Hugo's who inadvertently printed expiration dates on receipts. HR. 4008 §3(a)-(b). Because the cost of notifying and maintaining a class would be great and the benefit slim, especially in light of the

---

9/ Hugo's acknowledges that this Court in *Halperin v. Interpark, Inc.* granted class certification in a another FACTA case, finding a class action to be superior. No. 07 c 2161, 2007 WL 4219419, at *4 (N.D. Ill. Nov. 29. 2007). Although this Court rejected defendant's argument a class action was not superior because of the possibility of "disproportionally high" damages and conversely held "*Murray* [to be] controlling and Rule 23(b)(3)'s superiority requirement [ ] met," this Court did not explicitly rejected other arguments based on lack of superiority. *Id.* at *4. Further, the facts in *Interpark* are distinguishable from this case. There, the defendant "presented no arguments why [plaintiff's] claim is not typical of those of the class." *Id.* at *2. The class representative easily met the commonality, typicality, and predominance requirements under Rule 26 and did not have any of Mr. Thomas' unique characteristics, such as having been a prior victim of identity theft, having worked with compliance issues related to FACTA, and lacking concern for statutory damages or the case in general, to name a few. *Id.* at *2-4.

strong possibility that this action will not proceed, this Court should deny class certification. At a minimum, the Court should defer its decision, until the Senate has voted on H.R. 4008.

**CONCLUSION**

Plaintiff's bald, cookie-cutter class allegations are insufficient under Rule 23 to support class certification. Plaintiff provides nothing but conclusory allegations to support that the Rule 23(a) requirements of typicality and adequacy are satisfied, though there is ample evidence to the contrary. Plaintiff also cannot meet the requirements under Rule 23(b)(3), as individual issues predominate, and a class action is not superior under the circumstances presented here. Thus, Plaintiff's motion should be denied.

Dated: May 20, 2008

Respectfully Submitted,

**HUGO'S FROG BAR – NAPERVILLE, LLC**

By: ___/s/ Laura A. Bernatowicz___________
One of Its Attorneys

Jonathan S. Feld (#6270992)
Dawn M. Canty (#6200971)
Laura A. Bernatowicz (#6289055)
Katten Muchin Rosenman LLP
525 West Monroe Street
Chicago, Illinois 60661-3693
(312) 902-5200
(312) 902-1061 (fax)