# EXHIBIT D

to vote under the 19th amendment because of women's suffrage. So I congratulate her.

I ask my colleagues on both sides of the aisle to vote "aye" for H.R. 406.

Mrs. MALONEY of New York. Mr. Speaker, I rise in strong to support of H.R. 406, which awards a Congressional Gold Medal to Alice Paul.

Every American woman is indebted to Alice Paul for her lifelong dedication to women's suffrage. I am living proof of the advancements she has made for women. I am personally gratified that Congress is recognizing Alice Paul's contribution to American history. Alice Paul was the first cousin to my husband's grandmother. In fact, I named my oldest daughter after her.

Alice Paul passionately devoted her entire life to the advancement of women's rights. She was an extraordinary leader, ingenious fundraiser, and a brilliant politician. Wholeheartedly focused on suffrage, she lived in a cold room so she would not be tempted to sit up late and read novels.

Alice Paul truly revolutionized the suffragist movement. In 1913, Alice Paul and fellow suffragist Lucy Burns organized an impressive suffrage parade on the day before Woodrow Wilson's inauguration. In 1916, Paul founded the National Women's Party with the guiding philosophy of "holding the party in power responsible." Paul adamantly believed that women should never expect to be given the vote, but that they must take it through their own accord.

Under Paul's leadership, the National Women's Party was the first political organization in the United States to peacefully picket the White House. This political strategy is still widely used today. Originally the White House protests were tolerated by President Wilson. But as the women persistently picketed during the war, suffragist protestors were attacked by angry mobs and frequently arrested.

The suffragist prisoners demanded to be treated as political prisoners and staged hunger strikes. Their demands were met with brutality as suffragists, including older women, were beaten, pushed and thrown into cold, unsanitary, rat-infested cells. Women were even force-fed against their will. Thanks to the countless sacrifices made by suffrage activists, American women were finally granted the right to vote in 1920.

Yet, Alice Paul firmly believed that true fulfillment of women's rights was only advanced, not completely satisfied, by the achievement of suffrage. Paul drafted the Equal Rights Amendment for the United States Constitution in 1923. She devoted the rest of her life to this goal of constitutional protection for women's equality and today, feminists continue this pursuit. I have proudly continued her legacy by introducing the ERA every Congress since 1997.

Alice Paul's lifelong efforts achieved great strides not only for American women, but for all women of the world. She founded the World Woman's Party in 1938. Paul and the World Woman's Party successfully fought for the inclusion of gender equality into the United Nations Charter. Their efforts also led to the establishment of the United Nations Commission on the Status of Women. This Commission continues to be a principal global policy-making body for women's advancement.

Let us finally grant Alice Paul her rightful place in history. She is most deserving of the Congressional Medal of Honor. Her legacy opened the door for women's full participation in society and for that, we are forever grateful.

Mr. BACA. I yield back the balance of my time.

The SPEAKER pro tempore. The question is on the motion offered by the gentleman from California (Mr. BACA) that the House suspend the rules and pass the bill, H.R. 406, as amended.

The question was taken.

The SPEAKER pro tempore. In the opinion of the Chair, two-thirds being in the affirmative, the ayes have it.

Mr. SIMPSON. Mr. Speaker, I object to the vote on the ground that a quorum is not present and make the point of order that a quorum is not present.

The SPEAKER pro tempore. Pursuant to clause 8 of rule XX and the Chair's prior announcement, further proceedings on this motion will be postponed.

The point of no quorum is considered withdrawn.

---

## CREDIT AND DEBIT CARD RECEIPT CLARIFICATION ACT OF 2007

Mr. MAHONEY of Florida. Mr. Speaker, I move to suspend the rules and pass the bill (H.R. 4008) to amend the Fair Credit Reporting Act to make technical corrections to the definition of willful noncompliance with respect to violations involving the printing of an expiration date on certain credit and debit card receipts before the date of the enactment of this Act.

The Clerk read the title of the bill.

The text of the bill is as follows:

H.R. 4008

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

**SECTION 1. SHORT TITLE.**

This Act may be cited as the "Credit and Debit Card Receipt Clarification Act of 2007".

**SEC. 2. FINDINGS; PURPOSE.**

(a) FINDINGS.—The Congress finds as follows;

(1) The Fair and Accurate Credit Transactions Act (commonly referred to as "FACTA" ) was enacted into law in 2003 and 1 of the purposes of such Act is to prevent criminals from obtaining access to consumers' private financial and credit information in order to reduce identity theft and credit card fraud.

(2) As part of that law, the Congress enacted a requirement, through an amendment to the Fair Credit Reporting Act, that no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the card holder at the point of the sale or transaction.

(3) Many merchants understood that this requirement would be satisfied by truncating the account number down to the last 5 digits based in part on the language of the provision as well as the publicity in the aftermath of the passage of the law.

(4) Almost immediately after the deadline for compliance passed, hundreds of lawsuits were filed alleging that the failure to remove the expiration date was a willful violation of the Fair Credit Reporting Act even where the account number was properly truncated.

(5) None of these lawsuits contained an allegation of harm to any consumer's identity.

(6) Experts in the field agree that proper truncation of the card number, by itself as required by the amendment made by the Fair and Accurate Credit Transactions Act, regardless of the inclusion of the expiration date, prevents a potential fraudster from perpetrating identity theft or credit card fraud.

(7) Despite repeatedly being denied class certification, the continued appealing and filing of these lawsuits represents a significant burden on the hundreds of companies that have been sued and could well raise prices to consumers without corresponding consumer protection benefit.

(b) PURPOSE.—The purpose of this Act is to ensure that consumers suffering from any actual harm to their credit or identity are protected while simultaneously limiting abusive lawsuits that do not protect consumers but only result in increased cost to business and potentially increased prices to consumers.

**SEC. 3. CLARIFICATION OF WILLFUL NONCOMPLIANCE FOR ACTIONS BEFORE THE DATE OF THE ENACTMENT OF THIS ACT.**

(a) IN GENERAL.—Section 616 of the Fair Credit Reporting Act (15 U.S.C. 1681n) is amended by adding at the end the following new subsection:

"(d) CLARIFICATION OF WILLFUL NONCOMPLIANCE.—For the purposes of this section, any person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2004, and the date of the enactment of this subsection but otherwise complied with the requirements of section 605(g) for such receipt shall not be in willful noncompliance with section 605(g) by reason of printing such expiration date on the receipt.".

(b) SCOPE OF APPLICATION.—The amendment made by subsection (a) shall apply to any action, other than an action which has become final, that is brought for a violation of 605(g) of the Fair Credit Reporting Act to which such amendment applies without regard to whether such action is brought before or after the date of the enactment of this Act.

The SPEAKER pro tempore. Pursuant to the rule the gentleman from Florida (Mr. MAHONEY) and the gentlewoman from Illinois (Mrs. BIGGERT) each will control 20 minutes.

The Chair recognizes the gentleman from Florida.

GENERAL LEAVE

Mr. MAHONEY of Florida. Mr. Speaker, I ask unanimous consent that all Members may have 5 legislative days within which to revise and extend their remarks on this legislation and to insert extraneous material thereon.

The SPEAKER pro tempore. Is there objection to the request of the gentleman from Florida?

There was no objection.

Mr. MAHONEY of Florida. Mr. Speaker, I yield myself as much time as I may consume.

Mr. Speaker, I rise today in strong support of H.R. 4008, the Credit and Debit Card Receipt Clarification Act.

I would like to begin by thanking Members of both sides of the aisle for helping bring this commonsense legislation to the floor, including Ranking Member BACHUS, Representative MELISSA BEAN, MICHELE BACHMANN and

many others. I would also like to thank my chairman, Representative BARNEY FRANK, and his staff for their efforts in bringing this important piece of legislation to the floor.

Mr. Speaker, in 2003 Congress passed the Fair and Accurate Credit Transactions Act, the FACT Act, to ensure that Americans could continue to rely on the efficiencies of the 21st century financial and credit system while being protected from identity theft, credit card fraud and other financial crimes.

This important law has given consumers new and important rights. For example, the FACT Act provides consumers with the right to obtain one free copy of their credit record from each of the three major credit bureaus every 12 months. In addition, this legislation created the Financial Literacy and Education Commission to better help Americans understand and manage their finances.

One provision in the FACT Act was intended to enhance consumer protection from credit card fraud by limiting the amount of information printed on receipts from a credit card or debit card transaction. Today, when consumers go into a convenience store, restaurant or retailer, they will notice that their credit card receipt does not contain the full credit card number. This small but important change to their credit card receipts helps prevent criminals from obtaining the receipt and using it to make fraudulent purchases.

☐ 1700

Unfortunately, this provision, as drafted, has caused a great deal of confusion and is now at the center of hundreds of lawsuits all over the country. Specifically, it required that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." The overwhelming majority of businesses believed that they were in compliance with this provision of the law by truncating the card number and printing the expiration date of the credit card.

Furthermore, the publicity surrounding the passage of the act, whether it was press accounts of the President's statement at the signing of the subsequent Federal Trade Commission press release describing the new requirements of the bill, pointed entirely to the truncation of the credit card number.

I would like point out that experts agree that the truncation of the card number, by itself, regardless of whether or not the expiration date was redacted from the receipt, removes the single most crucial piece of information that a criminal would need to perpetrate account fraud.

I can understand the shock that many of these businesses must have felt when, thinking that they had taken all the steps necessary to protect their customers and comply with the law, they were later served notice of a pending class action lawsuit against them accusing them of violating the FACT Act because they had failed to redact the expiration date in addition to truncating the credit card number.

When you consider that the law levies between a $100 and $1,000 fine for each credit card receipt, the amount of liability threatens to bankrupt healthy, successful businesses.

While most, if not all these companies, have quickly resolved the issue by instructing their point-of-sale vendors to also redact the expiration date, they continue to face these lawsuits. Not only have these lawsuits been filed against large corporations, they have been filed against small businesses.

Last month I was contacted by Arthur Cullen. Mr. Cullen and his wife, Nieves, are the owners of Havana Harry's Restaurant in south Florida. Mr. Cullen states in his letter that he and his wife began his business with a dream and some savings.

Today, Havana Harry's employs 75 people and serves more than 4,000 people on a weekly basis. Like so many others, Mr. Cullen believed he was complying with the FACT Act by truncating the credit card number. Unfortunately, a lawsuit was filed against his business because he also failed to delete the expiration date. As a result of the lawsuit, Mr. Cullen is concerned about the future of Havana Harry's.

My legislation is designed to provide relief to people like Mr. Cullen, proud entrepreneurs and small business owners, who did everything they thought was necessary to comply with the FACT Act.

H.R. 4008 makes a technical correction to the FACT Act to free hundreds of businesses from potential exposure to statutory damages that could total hundreds of millions or even billions of dollars solely because of their past harmless failure to redact the expiration date from an otherwise FACT Act complaint receipt.

Let me be clear, not one of these suits has alleged any harm to the consumer. In the event that a consumer does experience identity theft, account fraud, or some other harm, my legislation preserves a consumer's right to sue.

Finally, H.R. 4008 does not eliminate a business' obligation to properly truncate the account number or to redact the expiration date from its receipts, and it does not protect merchants who printed more than the account number permitted by the FACT Act.

With a struggling economy in Florida and across America, the last thing businesses and consumers need are lawsuits that needlessly drive up costs. These abusive lawsuits will likely result in higher prices to the public and could even result in bankruptcies and more job losses.

I urge all of my colleagues to join me in voting "yes" for this commonsense fix to a problem that has the potential to put out of business thousands of successful businesses which will ultimately hurt, rather than protect, consumers.

Mr. Speaker, I reserve the balance of my time.

Mrs. BIGGERT. Mr. Speaker, I yield myself such time as I may consume.

I would like to thank the gentleman from Florida (Mr. MAHONEY) for his work on this bill. I am pleased to be a cosponsor of the bill and urge my colleagues to support it.

In short, the bill makes a technical correction to a law Congress passed in 2003, The Fair and Accurate Credit Transactions Act, or FACTA. FACTA currently requires businesses to truncate a customer's credit or debit card number to five numbers. Many businesses complying with this requirement truncated the credit card number, but kept the expiration date of a customer's credit card on the receipt.

Very shortly after the FACTA was enacted, hundreds of lawsuits were filed against businesses because the plaintiffs claimed that expiration date should count as part of a customer's credit card number.

One such business is Home Run Inn, a family-owned business that makes "Chicago's Finest Pizza," located in Woodridge, Illinois. It was not the intention of Congress to include the expiration date as part of the credit card number and caused this confusion. To my knowledge, no consumer has been harmed or been a victim of identity theft or fraud as a result of his or her credit card expiration date being printed on a receipt.

Therefore, this bill clears up the matter. If this bill becomes law, attorneys will no longer be tempted to file lawsuits against businesses, but consumers harmed by a business who was violating FACTA can still file a lawsuit.

Again, I urge my colleagues to support the bill and reserve the balance of my time.

Mr. MAHONEY of Florida. Mr. Speaker, I yield to my distinguished colleague and friend from Illinois (Ms. BEAN) as much time as she may consume.

Ms. BEAN. I thank the gentleman for yielding.

Mr. Speaker, I rise in strong support of H.R. 4008, The Credit and Debit Card Receipt Clarification Act, which makes a technical correction to The Fair and Accurate Transactions Act, FACTA.

As a strong advocate for increased security of individuals' personal financial data, I support the provisions to fight ID theft included in FACTA, which was signed into law in 2003. The bill sought to protect the privacy of the information and the consumers' credit report, assist victims of identity theft and prevent fraudulent credit transactions.

In particular, section 133 of FACTA, which went into effect in December of 2006, prohibits merchants from printing more than the last five digits of a consumer's credit and debit card numbers

or the expiration date on printed receipts. Some interpreted this to mean don't print either/or, others said print neither.

While I support the general intent of this section, it is noted by many identity theft experts that individuals who commit fraud by stealing consumers' credit and debit card numbers cannot do so without having the entire correct account number.

Section 113 eliminates one avenue for these criminals to steal account numbers by prohibiting the printing of full account numbers on paper receipts. Due to the vagueness of section 113 and lack of guidance from the FTC, the agency responsible for enacting the section, many businesses only truncated a consumer's credit or debit card number, and now hundreds of businesses across the country are facing lawsuits for failing to redact the expiration date from an otherwise FACTA compliant receipt.

In my home State of Illinois, over 20 businesses, large and small, are facing millions of dollars of unnecessary lawsuits that could put them out of business.

Since the lawsuits have been filed, most businesses have updated their cash registers to ensure they are in full compliance with either interpretation of FACTA. Unfortunately, they still face pending lawsuits that will exacerbate the economic pressures these businesses are already facing in today's market.

I met a local restaurateur who was so adamant about fighting these predatory class action lawsuits that he is also paying the legal fees for a small coffee shop owner who could not possibly afford the legal bills.

To ensure that our small businesses are not unjustly targeted, I was proud to cosponsor this bill and join my colleague from Florida, TIM MAHONEY, in introducing H.R. 4008. This bill provides a technical correction to make businesses compliant with section 113 of FACTA if they had properly truncated a consumer's credit or debit card number but failed to redact the expiration date up to the point of enactment of this bill.

It does not protect businesses who failed to truncate a customer's account number. While H.R. 4008 preserves a consumer's right to sue in the event of actual harm or account fraud, it is important to note that of the over 500 lawsuits already filed, none have made any allegation of consumer harm.

This bill is a commonsense solution to a significant problem many of our local businesses are facing, particularly in these challenging economic conditions. I urge my colleagues to support H.R. 4008.

Mrs. BIGGERT. Mr. Speaker, I yield such time as she may consume to another member of the Financial Services Committee, Mrs. BACHMANN from Minnesota.

Mrs. BACHMANN. Mr. Speaker, I rise as the chief cosponsor of H.R. 4008 to support this important bill, and I want to associate myself strongly with the remarks from the gentleman from Florida (Mr. MAHONEY) and thank him for the important work that he brought to bear on this bill, also Ms. BEAN for her work on the bill and also for Mrs. BIGGERT, as well, for working with me to help protect American business and consumers from frivolous lawsuits.

Millions of consumers across America will experience a little extra pain in the pocketbook unless Congress passes The Credit and Debit Card Receipt Clarification Act and businesses across America, both large and small, from Main Street to Wall Street will be hurt as well.

They are watching Congress this week to see if we care; and, second, to see if we are paying attention to them. They are watching us to see if we can work across the aisle, which I am happy to say we are working across the aisle, to pass a simple but critical update to The Fair and Accurate Credit Transaction Act, otherwise known as FACTA. In an effort to prevent theft and fraud, Congress required through FACTA that businesses print, as was stated earlier in our testimony, only the last five digits or less of a person's credit card or just the expiration date on transaction receipts.

Many companies made sure that they printed no more than five digits of the receipt, but they also printed the expiration date. Many simply just weren't clear on the new requirement.

Unfortunately, trial lawyers in America saw opportunity knocking, and they found a way to take advantage of this situation. Lawyers' eyes lit up with dollar signs, and they began filing suits against companies across the United States. Any company that kept printing the expiration date, along with a few of the cards' digits, instead of just one or the other, became a potential litigation target.

However, identity theft prevention experts say that five digits of a credit card, plus an expiration date printed out on a receipt, are not enough to steal someone's account. All of these people, however, are being sued on a technicality that poses no threat to people's credit or their debit accounts.

Take, for example, in my district, the Rockler Companies, Inc., one of the many family-owned businesses in my district. Rockler sells and distributes products to the woodworking community, and, unfortunately, they became a fallen victim to just such a frivolous lawsuit. Unfortunately, they have already had to pay out over $30,000 in legal expenses for this wonderful small business in Minnesota, not because they did anything wrong, but because Congress, because this body, accidently left open a legal loophole. That's $30,000, something that can mean life or death for one of America's small businesses.

This bill on the floor today is very important. It may not seem like much, but H.R. 4008, The Credit and Debit Card Receipt Clarification Act, closes that loophole. It liberates American businesses, usually small businesses, from frivolous lawsuits.

They still have to update their receipts. They still have to comply with FACTA, but they can't be dragged through years of lawsuits because they printed a credit card expiration date.

If they print enough information to give thieves a toe-hold, they still can be sued. If they print over five digits of the card number, they still can be sued. If they do anything that puts customers' accounts in real jeopardy, they can be sued. They cannot be sued for this remote congressional technicality. That's only right.

With H.R. 4008, consumers will be protected on both ends of the transaction. After all, who will pay the real price for this? Businesses across America will have to offset the cost of these lawsuits by raising their prices, if they can, and American consumers will be left holding the short end of the stick, or the business will suffer.

At a time when Americans are already squeezed by the rising cost of living, by outrageous prices of gasoline at the pump, this is the last thing we need right now in our American economy. I am so happy that we are working together hand-in-hand across the aisle to show the American people that Congress is actually listening to them today, listening to their concerns and acting wisely on their behalf.

The Credit and Debit Card Receipt Clarification Act is pretty simple, it's no nonsense, it's fair, it's necessary, and it's bipartisan. That is good for businesses, it's good for consumers, and I thank and urge all of my colleagues in the House and ask them to join both Congressman MAHONEY and myself in supporting this wonderful bill.

Mr. MAHONEY of Florida. Mr. Speaker, I reserve the balance of my time.

Mrs. BIGGERT. Mr. Speaker, I yield back the balance of my time.

Mr. MAHONEY of Florida. Mr. Speaker, I would like to thank Chairman FRANK, Ranking Member BACHUS and my cosponsors, Congresswomen BACHMANN, BIGGERT and BEAN, who helped me with this legislation, and 48 others who stood up for small businesses who are, right now, concerned about their viability as they are faced with the specter of a frivolous lawsuit.

□ 1715

I would just say that time is running out. I also would like to thank Senator SCHUMER for dropping the corresponding legislation in the Senate and I ask my Senate colleagues to act quickly because small businesses need relief immediately.

Mr. BACHUS. Mr. Speaker, I support H.R. 4008 and commend the primary sponsors of the legislation, the gentleman from Florida, Mr. MAHONEY, and the gentlewoman from Minnesota, Mrs. BACHMANN, for bringing it forward.

In 2003, Congress passed the Fair and Accurate Credit Transactions Act, FACT Act, to

improve our nationwide credit reporting system and provide consumers with important new protections against identity theft, including the right to a free annual credit report. As the principal House author of the FACT Act, I can personally attest that when Congress passed that landmark legislation, it was never our intent to create opportunities for frivolous litigation. Because H.R. 4008 helps to clarify and underscore that intent, I am proud to cosponsor it.

One of the many consumer protections we included in the FACT Act was a provision that prohibited merchants from printing "more than the last 5 digits of the card number or the expiration date upon any receipt provided to the card holder at the point of the sale or transaction." Unfortunately, enterprising trial lawyers have sought to exploit this provision by bringing hundreds of lawsuits against businesses, large and small, for failing to redact the expiration date from credit and debit card receipts. The suits allege that this failure constitutes a willful violation of the FACT Act, even though many retailers believed they complied with the law by truncating account numbers on receipts. And a "willful violation" can put a company out of business: penalties for such violations under the Fair Credit Reporting Act are statutory damages of not less than $100 and not more than $1000 dollars per consumer, as well as punitive damages and attorney's fees.

Thankfully, we can fix this problem, and it is fair and reasonable for us to do so. Truncating the account number is sufficient in almost every instance to protect consumers against identity theft and credit card fraud, and there are no reported cases of consumers suffering harm from the appearance of account expiration dates on their receipts. Common sense alone should tell us that there are no grounds for these punitive suits, but common sense is sometimes not enough. Representatives BACHMANN and MAHONEY have offered a simple, technical fix that will address this problem where common sense has failed. Mr. Speaker, I strongly support their legislative solution and urge its adoption.

Mr. MAHONEY of Florida. Mr. Speaker, I have no further requests for time, and I yield back the balance of my time.

The SPEAKER pro tempore (Mr. SERRANO). The question is on the motion offered by the gentleman from Florida (Mr. MAHONEY) that the House suspend the rules and pass the bill, H.R. 4008.

The question was taken.

The SPEAKER pro tempore. In the opinion of the Chair, two-thirds being in the affirmative, the ayes have it.

Mr. MAHONEY of Florida. Mr. Speaker, on that I demand the yeas and nays.

The yeas and nays were ordered.

The SPEAKER pro tempore. Pursuant to clause 8 of rule XX and the Chair's prior announcement, further proceedings on this motion will be postponed.

## EXPRESSING CONDOLENCES AND SYMPATHY TO PEOPLE OF BURMA FOR LOSS OF LIFE AND DESTRUCTION CAUSED BY CYCLONE NARGIS

Mr. FALEOMAVAEGA. Mr. Speaker, I move to suspend the rules and agree to the resolution (H. Res. 1181) expressing condolences and sympathy to the people of Burma for the grave loss of life and vast destruction caused by Cyclone Nargis.

The Clerk read the title of the resolution.

The text of the resolution is as follows:

H. RES. 1181

Whereas on the night of May 2, 2008, through the morning of May 3, 2008, Cyclone Nargis, the first tropical cyclone to make landfall on Burma since Cyclone Mala in 2006, struck the coast of Burma;

Whereas Cyclone Nargis caused more destruction in Burma than the Indian Ocean tsunami of December 2004;

Whereas Cyclone Nargis has caused the death of tens of thousands of people, displaced hundreds of thousands, and is anticipated to affect over a million people;

Whereas Cyclone Nargis has caused significant damage to Burma's rice crop, likely worsening the global food crisis and affecting the supply of rice in Burma and worldwide;

Whereas on May 7, 2008, news media reported that the death toll, as accounted by a United States envoy, could reach over 100,000;

Whereas tens of thousands of people remain missing in the storm's wake;

Whereas Cyclone Nargis has devastated major parts of Burma, including extensive damage to Burma's largest city of Rangoon and throughout the Irrawaddy Delta region, Bago (Pegu) division, Karen State, and Mon State;

Whereas initially 5 regions in Burma were declared disaster zones;

Whereas 2 Irrawaddy Division townships, Kyait Lat and Latputda, were almost completely destroyed, leaving several hundred thousand people without homes or shelters;

Whereas fallen trees, demolished homes, downed power and telephone lines, and debris have blocked roads and blanketed the affected area;

Whereas hundreds of thousands of people are in dire need of emergency shelter and clean drinking water;

Whereas Burma's military regime did little to warn the people and is not providing adequate humanitarian assistance to address basic needs and prevent further loss of life;

Whereas despite the devastation, the military regime has announced plans to go ahead with its May 10, 2008, referendum on a sham constitution, delaying voting only in portions of the affected Irrawaddy region and Rangoon;

Whereas the military regime has failed to provide life-protecting and life-sustaining services to its people;

Whereas more than 30 disaster assessment teams from 18 different Nations and the United Nations have been denied permission to enter Burma by the junta;

Whereas the United States, through its Government, the Burma-American community, and its people as a whole, has already extended significant support to the people of Burma during this difficult time, including a $250,000 emergency contribution authorized by the United States Embassy in Burma to be released immediately, and $3,000,000 in additional aid relief announced on May 6, 2008, by the White House; and

Whereas a United States Agency for International Development disaster response team is positioned in neighboring Thailand: Now, therefore, be it

*Resolved*, That the House of Representatives—

(1) extends its condolences and sympathy to the people of Burma for the grave loss of life and vast destruction caused by Cyclone Nargis;

(2) vows its full support of and solidarity with the people of Burma;

(3) calls on Americans to provide immediate emergency assistance to cyclone victims in Burma through humanitarian agencies;

(4) expresses confidence that the people of Burma will succeed in overcoming the hardships incurred because of this tragedy;

(5) calls for the Burmese military junta to consider the well-being of its people and accept broad international assistance; and

(6) demands that the referendum to entrench military rule be called off, allowing all resources to be focused on disaster relief to ease the pain and suffering of the Burmese people.

The SPEAKER pro tempore. Pursuant to the rule, the gentleman from American Samoa (Mr. FALEOMAVAEGA) and gentlewoman from Florida (Ms. ROS-LEHTINEN) each will control 20 minutes.

The Chair recognizes the gentleman from American Samoa.

GENERAL LEAVE

Mr. FALEOMAVAEGA. Mr. Speaker, I ask unanimous consent that all Members may have 5 legislative days in which to revise and extend their remarks and include extraneous material on the resolution under consideration.

The SPEAKER pro tempore. Is there objection to the request of the gentleman from American Samoa?

There was no objection.

Mr. FALEOMAVAEGA. Mr. Speaker, I rise in strong support of this resolution, and I yield myself such time as I may consume.

First of all, Mr. Speaker, I would like to thank the distinguished gentlemen of this committee of the House, the Foreign Affairs Committee, Mr. BERMAN, and our senior ranking member, Ms. ROS-LEHTINEN, for their leadership and support of this legislation. I would also like to thank our distinguished colleague, a member of the House Foreign Affairs Committee, the gentleman from New York (Mr. CROWLEY) for being the lead sponsor of this proposed resolution.

Mr. Speaker, the long-suffering people of Myanmar are once again gripped by tragedy. On May 2, Cyclone Nargis slammed into Myanmar, ripping through the southern part of the country and leaving a path of enormous devastation.

The United Nations reports that so far the cyclone has killed between 60,000 to 100,000 people and affected well over one million. Hundreds of thousands of people are without food, fuel, clean water and shelter. As high as the death toll is now, the greater fear, Mr. Speaker, is that disease, like cholera, will spread in the affected areas, taking many more lives. Aid agencies

| | | |
|---|---|---|
| Pickering | Scalise | Westmoreland |
| Radanovich | Weldon (FL) | Wilson (SC) |

NOT VOTING—23

| | | |
|---|---|---|
| Andrews | Hinojosa | Rohrabacher |
| Bonner | Hulshof | Roskam |
| Bono Mack | Larson (CT) | Rush |
| Carney | Mack | Udall (NM) |
| Clay | Mollohan | Watson |
| Crenshaw | Myrick | Weller |
| Ferguson | Peterson (PA) | Wynn |
| Gerlach | Richardson | |

☐ 1913

Mr. KIRK, Mrs. BIGGERT and Ms. FALLIN changed their vote from "nay" to "yea."

So (two-thirds being in the affirmative) the rules were suspended and the bill was passed.

The result of the vote was announced as above recorded.

A motion to reconsider was laid on the table.

## MOMENT OF SILENCE FOR THE PEOPLE OF SICHUAN PROVINCE, CHINA

(Mr. WU asked and was given permission to address the House for 1 minute.)

Mr. WU. Madam Speaker, yesterday, at 2:28 p.m. local time, a massive earthquake measuring 7.9 on the Richter scale struck Sichuan Province in southwest China. Tragically, the death toll is now estimated in excess of 12,000 people, and it may rise.

There are thousands of people injured and thousands more remain trapped beneath rubble. Especially tragic are the hundreds, and, perhaps over 1,000, school children who are trapped beneath their collapsed schools.

I ask my colleagues to join me in observing a moment of silence to express our deep sympathy for those affected by yesterday's earthquake in China.

The SPEAKER pro tempore. Members will rise for a moment of silence.

☐ 1915

## ANNOUNCEMENT BY THE SPEAKER PRO TEMPORE

The SPEAKER pro tempore. Without objection, 5-minute voting will continue.

There was no objection.

## CREDIT AND DEBIT CARD RECEIPT CLARIFICATION ACT OF 2007

The SPEAKER pro tempore. The unfinished business is the vote on the motion to suspend the rules and pass the bill, H.R. 4008, on which the yeas and nays were ordered.

The Clerk read the title of the bill.

The SPEAKER pro tempore. The question is on the motion offered by the gentleman from Florida (Mr. MAHONEY) that the House suspend the rules and pass the bill, H.R. 4008.

This will be a 5-minute vote.

The vote was taken by electronic device, and there were—yeas 407, nays 0, not voting 26, as follows:

[Roll No. 308]

YEAS—407

| | | |
|---|---|---|
| Abercrombie | DeGette | Kaptur |
| Ackerman | Delahunt | Keller |
| Aderholt | DeLauro | Kennedy |
| Akin | Dent | Kildee |
| Alexander | Diaz-Balart, M. | Kilpatrick |
| Allen | Dicks | Kind |
| Altmire | Dingell | King (IA) |
| Arcuri | Doggett | King (NY) |
| Baca | Donnelly | Kingston |
| Bachmann | Doolittle | Kirk |
| Bachus | Doyle | Klein (FL) |
| Baird | Drake | Kline (MN) |
| Baldwin | Dreier | Knollenberg |
| Barrett (SC) | Duncan | Kucinich |
| Barrow | Edwards | Kuhl (NY) |
| Bartlett (MD) | Ehlers | LaHood |
| Barton (TX) | Ellison | Lamborn |
| Bean | Ellsworth | Lampson |
| Becerra | Emanuel | Langevin |
| Berkley | Emerson | Larsen (WA) |
| Berman | Engel | Larson (CT) |
| Berry | English (PA) | Latham |
| Biggert | Eshoo | LaTourette |
| Bilirakis | Etheridge | Latta |
| Bishop (GA) | Everett | Lee |
| Bishop (NY) | Fallin | Levin |
| Bishop (UT) | Farr | Lewis (CA) |
| Blackburn | Fattah | Lewis (GA) |
| Blumenauer | Feeney | Lewis (KY) |
| Blunt | Filner | Linder |
| Boehner | Flake | Lipinski |
| Boozman | Forbes | LoBiondo |
| Boren | Fortenberry | Loebsack |
| Boswell | Fossella | Lofgren, Zoe |
| Boucher | Foster | Lowey |
| Boustany | Foxx | Lucas |
| Boyd (FL) | Frank (MA) | Lungren, Daniel E. |
| Boyda (KS) | Franks (AZ) | Lynch |
| Brady (PA) | Frelinghuysen | Mahoney (FL) |
| Brady (TX) | Gallegly | Maloney (NY) |
| Braley (IA) | Garrett (NJ) | Manzullo |
| Broun (GA) | Giffords | Marchant |
| Brown (SC) | Gilchrest | Markey |
| Brown, Corrine | Gillibrand | Marshall |
| Brown-Waite, Ginny | Gingrey | Matheson |
| Buchanan | Gohmert | Matsui |
| Burgess | Gonzalez | McCarthy (CA) |
| Burton (IN) | Goode | McCarthy (NY) |
| Butterfield | Goodlatte | McCaul (TX) |
| Buyer | Gordon | McCollum (MN) |
| Calvert | Granger | McCotter |
| Camp (MI) | Graves | McCrery |
| Campbell (CA) | Green, Al | McDermott |
| Cannon | Green, Gene | McGovern |
| Cantor | Grijalva | McHenry |
| Capito | Gutierrez | McHugh |
| Capps | Hall (NY) | McIntyre |
| Capuano | Hall (TX) | McKeon |
| Cardoza | Hare | McMorris Rodgers |
| Carnahan | Harman | McNerney |
| Carson | Hastings (FL) | McNulty |
| Carter | Hastings (WA) | Meek (FL) |
| Castle | Hayes | Meeks (NY) |
| Castor | Heller | Melancon |
| Cazayoux | Hensarling | Mica |
| Chabot | Herger | Michaud |
| Chandler | Herseth Sandlin | Miller (FL) |
| Clarke | Hill | Miller (MI) |
| Clay | Hinchey | Miller (NC) |
| Cleaver | Hirono | Miller, Gary |
| Clyburn | Hobson | Mitchell |
| Coble | Hodes | Moore (KS) |
| Cohen | Hoekstra | Moore (WI) |
| Cole (OK) | Holden | Moran (KS) |
| Conaway | Holt | Moran (VA) |
| Conyers | Honda | Murphy (CT) |
| Cooper | Hooley | Murphy, Patrick |
| Costa | Hoyer | Murphy, Tim |
| Costello | Hunter | Murtha |
| Courtney | Inglis (SC) | Musgrave |
| Cramer | Inslee | Nadler |
| Crowley | Israel | Napolitano |
| Cubin | Issa | Neal (MA) |
| Cuellar | Jackson (IL) | Neugebauer |
| Culberson | Jackson-Lee (TX) | Nunes |
| Cummings | Jefferson | Oberstar |
| Davis (AL) | Johnson (GA) | Obey |
| Davis (CA) | Johnson (IL) | Olver |
| Davis (IL) | Johnson, E. B. | Ortiz |
| Davis (KY) | Johnson, Sam | Pallone |
| Davis, David | Jones (NC) | Pascrell |
| Davis, Lincoln | Jones (OH) | Pastor |
| Davis, Tom | Jordan | Paul |
| Deal (GA) | Kagen | Payne |
| DeFazio | Kanjorski | |

| | | |
|---|---|---|
| Pearce | Sarbanes | Terry |
| Pence | Saxton | Thompson (CA) |
| Perlmutter | Scalise | Thompson (MS) |
| Peterson (MN) | Schakowsky | Thornberry |
| Petri | Schiff | Tiahrt |
| Pickering | Schmidt | Tiberi |
| Pitts | Schwartz | Tierney |
| Platts | Scott (GA) | Towns |
| Poe | Scott (VA) | Tsongas |
| Pomeroy | Sensenbrenner | Turner |
| Porter | Serrano | Udall (CO) |
| Price (GA) | Sessions | Upton |
| Price (NC) | Sestak | Van Hollen |
| Pryce (OH) | Shadegg | Velázquez |
| Putnam | Shays | Visclosky |
| Radanovich | Shea-Porter | Walberg |
| Rahall | Sherman | Walden (OR) |
| Ramstad | Shimkus | Walsh (NY) |
| Rangel | Shuler | Walz (MN) |
| Regula | Shuster | Wamp |
| Rehberg | Simpson | Wasserman Schultz |
| Reichert | Sires | Waters |
| Renzi | Skelton | Watt |
| Reyes | Slaughter | Waxman |
| Reynolds | Smith (NE) | Weiner |
| Rodriguez | Smith (NJ) | Welch (VT) |
| Rogers (AL) | Smith (TX) | Weldon (FL) |
| Rogers (KY) | Smith (WA) | Westmoreland |
| Rogers (MI) | Snyder | Wexler |
| Ros-Lehtinen | Solis | Whitfield (KY) |
| Ross | Souder | Wilson (NM) |
| Rothman | Space | Wilson (OH) |
| Roybal-Allard | Speier | Wilson (SC) |
| Royce | Spratt | Wittman (VA) |
| Ruppersberger | Stearns | Wolf |
| Ryan (OH) | Stupak | Woolsey |
| Ryan (WI) | Sullivan | Wu |
| Salazar | Sutton | Yarmuth |
| Sali | Tancredo | Young (AK) |
| Sánchez, Linda T. | Tanner | Young (FL) |
| Sanchez, Loretta | Tauscher | |
| | Taylor | |

NOT VOTING—26

| | | |
|---|---|---|
| Andrews | Higgins | Rohrabacher |
| Bilbray | Hinojosa | Roskam |
| Bonner | Hulshof | Rush |
| Bono Mack | Mack | Stark |
| Carney | Miller, George | Udall (NM) |
| Crenshaw | Mollohan | Watson |
| Diaz-Balart, L. | Myrick | Weller |
| Ferguson | Peterson (PA) | Wynn |
| Gerlach | Richardson | |

☐ 1923

So (two-thirds being in the affirmative) the rules were suspended and the bill was passed.

The result of the vote was announced as above recorded.

A motion to reconsider was laid on the table.

## REPORT ON RESOLUTION PROVIDING FOR CONSIDERATION OF CONFERENCE REPORT ON H.R. 2419, FOOD, CONSERVATION, AND ENERGY ACT OF 2008

Mr. McGOVERN, from the Committee on Rules, submitted a privileged report (Rept. No. 110-629) on the resolution (H. Res. 1189) providing for consideration of the conference report to accompany the bill (H.R. 2419) to provide for the continuation of agricultural programs through fiscal year 2012, and for other purposes, which was referred to the House Calendar and ordered to be printed.

## REPORT ON RESOLUTION PROVIDING FOR ADOPTION OF S. CON. RES. 70, CONCURRENT RESOLUTION ON THE BUDGET FOR FISCAL YEAR 2009

Mr. McGOVERN, from the Committee on Rules, submitted a privileged report (Rept. No. 110-630) on the