**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARK THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | 08 C 455 |
| | ) | |
| v. | ) | Judge Bucklo |
| | ) | |
| HUGO'S FROG BAR-NAPERVILLE, LLC, | ) | Magistrate Judge Valdez |
| | ) | |
| Defendant. | ) | |

**HUGO'S FROG BAR-NAPERVILLE, LLC'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND**

Defendant Hugo's Frog Bar-Naperville, LLC, ("*Hugo's*"), by and through its attorneys, in support of Hugo's Motion for Judgment on the Pleadings, and in opposition of Plaintiff's Motion for Leave to Amend, states the following:

## INTRODUCTION

The Credit and Debit Card Receipt Clarification Act of 2007 (the "*Clarification Act*") eliminated any cause of action plaintiff Mark Thomas ("*Plaintiff*") may have had against Hugo's. Indeed, Plaintiff concedes that he no longer has a cause of action based on his original complaint because statutory damages are no longer available under 15 U.S.C §1681n. (Doc. 42, Pl. Br. At 3.) Nevertheless, Plaintiff belatedly seeks to amend his complaint for actual damages under 15 U.S.C. §1681o ("*Section 1681o*") despite the fact that none were previously alleged. This amendment is futile - - Plaintiff has testified that he has not suffered actual damages. Plaintiff's newly minted "actual damages" arise from a supposed heightened risk of future damages and the alleged emotional distress resulting from the need to monitor his credit. But Plaintiff's claim was extinguished by the Clarification Act and, therefore, the Court should grant Hugo's motion

for judgment on the pleadings and deny Plaintiff's motion for leave to file an amended complaint.

## ARGUMENT

### I. Plaintiff Has No Actual Damages under the FCRA.

To proceed on a claim for damages under 1681o, the consumer must have "actual damages." 15 U.S.C. § 1681o. Plaintiff did not plead actual damages in his original complaint - - for good reason - - because he has not suffered any such damages. Plaintiff conceded that "I'm not aware of any identity theft that [has] occurred after May 19 where the last receipt was." (Exhibit A to Defendant's Memorandum in Support of its Motion for Judgment on the Pleadings and in Opposition to Plaintiff's Motion for Leave to Amend Filed 6/13/08, Transcript of Mark Thomas ("Thomas Tr.") at 137; *see also* Thomas Tr. 61, 64-65.) Plaintiff has not pointed to a single instance of identity theft or credit card fraud of any sort arising after Hugo's allegedly printed the receipts containing his credit cards' expiration date. Thus, Plaintiff has no actual damages and cannot pursue a claim under Section 1681o.

#### A. A Risk Of Future Harm Does Not Constitute Actual Damages Under FACTA.

When eliminating statutory damages for printing expiration dates on receipts, Congress found "that proper truncation of the card number, ***by itself*** . . . regardless of the inclusion of the expiration date, prevents a potential fraudster from perpetrating identity theft or credit card fraud." Pub. L. 110-241, § 2(a)(6) (2008) (emphasis added). Thus, Congress acknowledged that its objectives for passing FACTA could be achieved through truncation of card numbers alone and that the printing of an expiration date on a receipt that did not display the entire card number did not place consumers at a heightened risk of such harm. *Id.*

Congress did, however, leave open the possibility of recovery for actual harm. Congress explicitly explained that the purpose of the Clarification Act was to ensure that consumers were protected from concrete, not speculative, damages:

> (b) Purpose—The purpose of this Act is to ensure that consumers suffering from ***actual harm to their credit or identity*** are protected while simultaneously limited abusive lawsuits that do not protect consumers but only result in increased cost of business and potentially increases prices to consumers.

Pub. L. 110-241, § 2(b) (emphasis added). Webster's Dictionary defines "actual" as "existing at the present time." Webster's New Twentieth Century Dictionary 20 (2d ed. 1983). In moving to curb lawsuits brought under FACTA by consumers who had not suffered actual damages, Congress did not allow lawsuits for only a ***risk*** of such harm. Indeed, such interpretation is inimical to the clear language of the Clarification Act.

Plaintiff cites *Crabill v. Trans Union, LLC*, 259 F.3d 662 (7th Cir. 2001) and *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006) for the proposition that "prospective injury may be compensable as actual damages under the FCRA." (Doc. 42, at 5.) But these cases referred to statutory damages, which were abolished by the Clarification Act with respect to expiration date violations as alleged here. In *Murray*, the court found that where a plaintiff suffers a "risk" of identity theft, statutory damages, not compensatory damages, are appropriate to redress that "risk." 434 F.3d at 953. *Crabill* did not address whether prospective injury could be compensable as actual damages but rather held that a consumer did not have standing to recover statutory attorney fees and costs under FCRA where no injury was alleged. 259 F.3d at 667.

Plaintiff relies on a case cited by Hugo's, *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629 (7th Cir. 2007), to argue that he can pursue a claim based upon a risk of injury because the *Pisciotta* court held that the injury-in-fact requirement for standing in federal court can be

satisfied "by an act which harms the plaintiff only by increasing the risk of future harm that the plaintiff would have otherwise faced, ***absent the defendant's actions.***" *Id.* at 634 (emphasis added). But the issue here is not just whether Plaintiff has standing to bring a claim, which Hugo's disputes based on Plaintiff's own admissions (including that his credit card numbers and expiration dates were displayed by others), but whether he has any cognizable actual damage, as required by the express terms of the Clarification Act. Because Plaintiff admits he has no such damages, general standing law cannot salvage his claim.

Further, Plaintiff does not have standing under the rule stated in *Pisciotta*. Plaintiff is not at an increased risk of future harm because of Hugo's actions. To the extent Plaintiff faces any increased risk of harm based on FACTA violations, given the number and severity of other violations and his prior instances of identify theft, Plaintiff would have faced any such risk regardless of Hugo's actions. Indeed, in *Pisciotta*, the Seventh Circuit noted that other courts that have considered this type of damages all have relied on the same basic premise: "Without more than allegations of increased risk of future identity theft, the plaintiffs have not suffered a harm that the law is prepared to remedy." *Id.* at 639.

**B. Plaintiff's Alleged Damages—Credit Monitoring and Emotional Distress—Are Insufficient As a Matter of Law.**

Plaintiff alleges that his actual damages include "time and inconvenience (emotional distress) arising out the class members' need to take action to mitigate their risk of identity theft and credit card fraud, including credit monitoring." (Doc. 42, at 4.) First, the Seventh Circuit has rejected damages for emotional distress in cases such as this, where the allegations are vague and conclusory. *See Ruffin-Thompkins v. Experian Info. Solution, Inc.*, 422 F.3d 603, 609-10 (7th Cir. 2005) (holding that the plaintiff's discussion of her hypertension and her description of defendant's actions as "inherently degrading or humiliating" did not meet the Seventh Circuit's

high threshold for proof of damages of emotional distress). Plaintiff has not asserted any facts to support his conclusory allegations of emotional distress.

The Seventh Circuit has significantly raised the standard to plead such damages; Plaintiff has not met this standard. *See id.* at 609-10; *McCelland v. Experian Info. Solutions, Inc.*, No. 04 C 5686, 2006 WL 2191973 (N.D. Ill. July 28, 2006) (holding that plaintiff's claim for emotional damages failed as a matter of law where the only evidence was plaintiff's own vague statements regarding anxiety allegedly caused by a decreased credit score). Indeed, in *Pisciotta*, the Seventh Circuit disallowed damages for "emotional distress and worry that third parties will use [the plaintiffs'] confidential personal information to cause them economic harm, or sell their confidential information to others who will in turn cause them economic harm." *Pisciotta*, 499 F.3d at 632.

The cases Plaintiff cites to support his claim of emotional distress fall woefully short of the mark. In *Wantz v. Experian Info. Solutions, Inc.*, 386 F.3d 829 (7th Cir. 2004), the court affirmed summary judgment against the plaintiff who asserted nothing more than conclusory statements of emotional distress for an inaccurate credit report. The Seventh Circuit reiterated that under the FCRA, "actual damages" require more than just conclusory statements about such damages. *Id.* at 834. The *Cousin* case cited by *Wantz,* which Plaintiff claims stands for the proposition that "[a]ctual damages may include damages for humiliation or mental distress even if the consumer has suffered no out-of-pocket losses. . . .", does not address this issue. Rather, the Court in *Cousin* made this statement as dicta in a footnote but went on to reject plaintiff's claim for emotional damages. *See Cousin v. Trans Union Corp.*, 246 F.3d 359, 369 (5th Cir. 2001). In *AFGE v. Hawley*, 2008 U.S. Dist. LEXIS 25308 (D.D.C. Mar. 31, 2008), although the court concluded that plaintiffs had adequately alleged actual damages by pleading emotional

damages, there plaintiffs, who were Transportation Security Administration Employees, alleged that because a hard drive containing personnel information was not adequately secured, names, social security numbers, birth dates, payroll information, financial statements and bank account and rating information were exposed. Plaintiff does not and cannot allege any such exposure here where only credit card expiration dates were revealed, one card expired over a year ago, and he concedes that over a year later he has not suffered actual damages.

Second, courts have uniformly rejected the theory that costs associated with credit monitoring services are "actual damages." *Pisciotta*, 499 F.3d at 637.[1] The Seventh Circuit specifically disallowed claims for "compensation for past and future credit monitoring services." *Id.* at 631-32. Plaintiff's claim that he has invested time and suffered inconvenience due to Hugo's printing his expiration date on receipts rings hollow. Plaintiff has not spent time, endured any inconvenience, or suffered emotional distress in response to Hugo's actions. Indeed, Plaintiff did not so much as notify his credit card companies of the supposed violations. (Thomas Tr. at 65-68.) He did not institute credit monitoring as a result of Hugo's actions, as Plaintiff already had credit monitoring in place before Hugo's printed his receipts. (Thomas Tr. at 64.) Though Plaintiff argues that credit monitoring was voluntary before and is mandatory

---

[1] *See, e.g., Shafran v. Harley-Davidson, Inc.*, No. 07 Civ. 01365, 2008 WL 763177, at *3 (N.D. Ill. March 20, 2008) (dismissing plaintiff's claim for damages related to "the time and expense of credit monitoring to combat an increased risk of future identity theft" as it was not "an injury that the law is prepared to remedy."); *Melancon v. Louisiana Office of Student Financial Assistance*, No. 07-7712, 07-9158, 2008 WL 2355753, at *4 (E.D. La. June 05, 2008) (holding that "mere possibility the personal information may be at an increased risk does not constitute actual injury"); *Hendricks v. DSW Shoe Warehouse, Inc.*, 444 F. Supp. 2d 775, 783 (W.D. Mich. 2006) (dismissing plaintiff's complaint for identity theft because plaintiff's alleged damages, the cost of a credit monitoring product, were not "actual damages or a cognizable loss"); *Forbes v. Wells Fargo Bank, N.A.*, 420 F. Supp. 2d 1018, 1020-21 (D. Minn. 2006) (rejecting plaintiff's negligence claims, where plaintiffs' "expenditure of time and money" in "monitoring their credit" does not constitute injury or damages because it "was not the result of any present injury, but rather the anticipation of future injury that has not materialized"); *Kahle v. Litton Loan Servicing, LP*, 486 F. Supp. 2d 705, 712-13 (S.D. Ohio 2007) (holding that plaintiff's alleged damages, the cost of credit monitoring along with the time spent monitoring credit, were not recoverable as a matter of law because "no unauthorized use of [Plaintiff's] personal information has occurred" and, thus, "any injury of Plaintiff is purely speculative."). *See also Guin v. Brazos Higher Educ. Serv. Corp., Inc.*, No. Civ. 05-668, 2006 WL 288483, at *6-7 (D. Minn. Feb. 7, 2006) (granting summary judgment for defendant because plaintiff failed to demonstrate an injury).

now, this argument is nonsensical because plaintiff argued that credit monitoring was "voluntary" after being a victim of identity theft three times but "mandatory" after receipts were printed that displayed expiration dates, for which Plaintiff can point to no adverse present consequence.

### C. Even If Mere Risk of Harm Were A Cognizable Damage, Hugo's Alleged Violations of Section 1681c(g)(1) Did Not Proximately Cause Plaintiff Any Increased Exposure to Harm.

Plaintiff baldly - - and inaccurately - - claims that Hugo's alleged violations of Section 1681(c)(g) are "the proximate cause of plaintiff and the class exposure to this harm." (Doc. 42, at 3.) When Hugo's allegedly printed Plaintiff's credit cards' expiration dates on two receipts in May, 2007, such action could not have caused any increased risk of harm to Plaintiff's credit or identity. First, as stated above, Congress has specifically recognized that printing an expiration date alone on a receipt, where the card number was properly truncated, does not put a consumer at an increased risk of harm. *See* Pub. L. 110-241, § 2(a)(6). Plaintiff does not allege that his card numbers were not properly truncated, only that his cards' expiration dates were displayed. Thus, Hugo's actions could not be the proximate cause of any increased risk of harm.

Second, even if the Court accepts Plaintiff's premise that he is at an increased risk of harm because a "dumpster diver" could use Hugo's receipts along with other information found on account statements or other personal documents as a pretext to gain more information about Plaintiff to commit identity theft, Plaintiff admits that he is not at such risk because he does not dispose of receipts and account statements at all. (Thomas Tr. at 41-42.) Plaintiff discovered the expiration dates on his receipts because he kept all of his receipts at home. *Id.* Furthermore, one of Plaintiff's credit cards that he used at Hugo's expired only weeks after Hugo's displayed that card's expiration date. Plaintiff claimed this receipt put him at a heightened risk of fraud

because it had his name on it, but Plaintiff can point to no harm that occurred with respect to this card, that expired more than a year ago. (Thomas Tr. at 98-99.) Therefore, even under Plaintiff's own theory, one of the very receipts that supposedly put him at an increased risk of identity theft is irrelevant because the expiration date it displayed has already passed, without any harm occurring.

Third, any increased risk of identity theft Plaintiff may face in the future would have been caused by a confluence of factors, not by Hugo's actions. Before he received these receipts at Hugo's, Plaintiff was admittedly a prior victim of identity theft. (Thomas Tr. at 8-9, 102-03.) Astonishingly, Plaintiff is also aware of at least one receipt from another retailer that displayed his expiration date ***and*** his entire card number, yet he did not cancel such card nor notify his credit card company. (Thomas Tr. at 42, 56, 67-68.) As such, Plaintiff would have a difficult time linking his Hugo's receipts to any future identity theft or credit card fraud, since it is much more likely that a perpetrator would be able to gain access to Plaintiff's identity through the receipt that contained his full account number and expiration date or through the information revealed through the prior instances of identity theft. Finally, Plaintiff admits to discovering up to 40 other receipts that displayed his cards' expiration dates. (Thomas Tr. at 136.) Any one of those receipts could have provided a fraudster with the same information allegedly displayed by Hugo's. Thus, Plaintiff will be unable to establish that Hugo's is the proximate cause of any future injury.

Furthermore, Plaintiff took no action to mitigate the risk of identity theft related to his Hugo's receipts. He neither cancelled those credit cards nor contacted his credit card companies to alert them of what had happened. (Thomas Tr. at 66.)

## II. Plaintiff Cannot Pursue A Class Action For Speculative Damages That If Established Would Not Be Uniform Among Class Members.

This lawsuit should not be allowed to proceed where Plaintiff has no cognizable injury. This is not a case such as *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004) and *Mace v. Van Ru*, 109 F.3d 338 (7th Cir. 1997) cited by Plaintiff, where damages were concrete but small individually. Here, damages are non-existent. Indeed, Plaintiff confuses the appropriateness of class certification with his burden to sufficiently allege actual damage for himself. Regardless of whether the class has suffered damages—which Hugo's contends it has not—where the only named Plaintiff has no actual damages, the case cannot proceed. Plaintiff cannot represent a class where he himself has no compensable injury.

Although premature, Plaintiff raises the issue of the appropriateness of class treatment. The alleged FACTA violations do not expose consumers to identity theft. Thus, creation of an "issue class" to determine whether Hugo's negligently violated FACTA is a futile exercise that would squander the time and resources of the court and the parties, in the absence of any indication that Hugo's has caused a single person to suffer actual damages. Plaintiff himself admits that he knows of no class members who have experienced actual damages, i.e. credit card fraud or identity theft. (Thomas Tr. at 82.)

Furthermore, risk of future damages to each class members would certainly not be uniform, but would depend on the unique circumstances of each plaintiff, such as: (i) whether the individual was a prior victim of identity theft; (ii) whether she had pre-existing credit monitoring in place; and (iii) whether she was careless with sensitive personal credit information. Accordingly, because class treatment would be inappropriate and Plaintiff can point to no actual damages of his own, this case should not proceed.

**III. Plaintiff's Motion for Leave to Amend Should Be Denied Because It Is Prejudicial and Untimely.**

Plaintiff has acknowledged that his original complaint can no longer proceed. (Doc. 42, at 3 n.1.) Recognizing that an adverse judgment against him was imminent and unavoidable, Plaintiff made a last ditch effort to amend his complaint to allege new "facts." But such facts, if true, were already in Plaintiff's possession at the time he filed his original complaint. Courts have refused to allow amendments to complaints where the plaintiff knew the facts at the time of filing but did not plead those facts. *See N. Am. Agricultural, Inc. v. Tulsa Screw Prods. Co.*, 947 F.2d 948, 1991 WL 229971, at *2 (7th Cir. 1991); *Talano v. NW Med. Faculty Foundation*, No. 97 C 7618, 1999 WL 1080416, at *2 (N.D. Ill. Nov. 23, 1999). Although this "new" theory of damages could have been brought together with Plaintiff's claim for statutory damages, Plaintiff did not bring such a claim. "[A] defendant would be seriously prejudiced if the plaintiff had the unfettered right to alter his cause of action every time it appeared that the defendant might be able to defeat it." *Talano*, 1999 WL 1080416, at *2.

Plaintiff must present a compelling reason why he did not plead a new theory earlier. *Id.*[2] The only "compelling" reason for this proposed amendment is that Plaintiff faces a certain adverse judgment. Defendant is prejudiced by this last minute change. Written discovery has been completed. Plaintiff has been deposed and class certification has been initially briefed by both parties. At this stage in the litigation, it would be unfair for Plaintiff to be able to bring a new cause of action based on alleged "facts" of which Plaintiff was well-aware at the time he filed his original Complaint.

---

[2] *See Spencer v. Wal-Mart Stores, Inc.*, 203 Fed. Appx. 193, 195 (10th Cir. 2006) (finding delay undue where facts were known by plaintiff for some time before filing amended complaint); *DRR, LLC v. Sears, Roebuck and Co.*, 171 F.R.D. 162, 167 (D. Del. 1997) (refusing to permit amendment where plaintiff was using Rule 15(a) as "an avenue to escape the consequences of its earlier decision on how to litigate this case").

## CONCLUSION

As such, the Court should grant judgment on the pleadings in favor of Hugo's with respect to Plaintiff's original complaint, dismiss the complaint with prejudice, deny Plaintiff's motion for leave to amend, and enter any relief this Court deems just and appropriate.

Date: July 18, 2008

Respectfully submitted,

**HUGO'S FROG BAR – NAPERVILLE, LLC**

By: /s/ Dawn M. Canty__________________
One of Its Attorneys

Jonathan S. Feld (#6270992)
Dawn M. Canty (#6200971)
Laura A. Bernatowicz (#6289055)
Katten Muchin Rosenman LLP
525 West Monroe Street
Chicago, Illinois 60661
(312) 902-5200